UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARGIE A. RELIFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-00358-LJM-DML |
| | ) |
| BRIGHT HOUSE NETWORKS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment (Dkt. 33) filed by Defendant Advance/Newhouse Partnership ("ANP") as to the claims raised by Plaintiff Margie A. Reliford in her Complaint.[1] Dkt. 1. Reliford, who is African American, alleged that during her employment with ANP, ANP engaged in a pattern of disparate treatment based on her race and retaliated against her for reporting the alleged racial abuse. Dkt. 1. Reliford claims that ANP's actions are in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and §1981a of the Civil Rights Act of 1866, 42 U.S.C. § 1981a ("§ 1981a"). Dkt. 1. In her response to ANP's Motion for Summary Judgment, Reliford abandoned her disparate treatment claims and only her retaliation claims remain. Dkt. 41-2 at 1. For the following reasons, the Court **GRANTS** ANP's Motion for Summary Judgment on Reliford's retaliation claims under Title VII and § 1981a.

---

[1] Reliford incorrectly identified the Defendant as "Bright House Networks, LLC."

1

## I. BACKGROUND

ANP hired Reliford on July 28, 2008, as a Collection Rep. Dkt. 34-1 at 44. On October 17, 2009, Reliford transferred to the position of Work Order Resolution Rep ("Order Rep"). In June 2010, ANP reorganized various departments and the Order Rep department and was placed in the Subscriber Accounting department. Dkt. 34-1 at 46-48; Dkt. 34-4 at 12-13. Following the transfer, Kristi Piper, the accounting supervisor, was Reliford's direct supervisor. Dkt. 34-1 at 46-47. Three other Order Reps, who were Caucasian, also transferred to the Subscriber Accounting department at the same time as Reliford. Dkt. 34-1 at 46-49.

In addition to the two Caucasian Order Reps, Piper supervised the Sub-Billing Reps. Dkt. 34-1 at 49. The Sub-Billing Reps included Diane Howard (Caucasian), Josh Simpson (African American), Latonda Finch (African American), Pagey Pinkston (African American), Annie Scarborough (African American), and C.J. Mitton (African American).[2] Following the consolidation of the departments, Piper integrated the duties of Order and Sub-Billing Reps. Dkt. 34-1 at 49; Dkt. 34-4 at 34. Piper required both Order and Sub-Billing reps to cross-train so that each employee could perform either role. Dkt. 34-4 at 34. In ANP's internal system, Order and Sub-Billing Reps maintained separate job titles, despite their shared duties. Dkt. 34-3, ¶ 6.

Typically, the Sub-Billing department worked Monday through Friday and rotated work on Saturdays. Dkt. 34-4 at 25. In August 2011, Reliford worked the 9:00 a.m. to

---

[2] These facts were presented in ANP's brief and not contested by Reliford in her Response. *See* dkt. 34 at 4. In Reliford's deposition, however, she identified three other Caucasian employees under Piper's supervision: "We had Lori Beatty, she was Caucasian. We had Norma, she was Caucasian. And we had Person Z, I can't remember her name. She retired." Dkt. 34-1 at 51-52.

6:00 p.m. shift on Monday through Friday, but requested a schedule change to accommodate her part-time employment with Best Buy. Dkt. 34-1 at 101. Piper agreed to allow Reliford to work every Saturday and leave early on Thursdays to accommodate this part-time work. Dkt. 34-1 at 101-02. Reliford was given Sundays and Tuesdays off. Dkt. 34-1 at 101-02.

Sometime in 2013 or early 2014, Piper became concerned with Reliford's productivity on the Saturdays that she worked. Dkt. 34-5, ¶ 8. Reliford was not completing some of her work items and work orders were not being checked in. Dkt. 34-5, ¶ 8. A report revealed that Reliford checked in far fewer work orders on Saturdays than the rotating Saturday employee. Dkt. 34-1 at 77-78; Dkt. 34-5, ¶ 8. When confronted by Piper about these issues, Reliford told Piper that she had too much to do on Saturdays and could not complete all of her work. Dkt. 34-5, ¶ 9. Piper told Reliford to begin writing down her tasks that she completed on Saturdays, but she only did so once. Dkt. 34-5, ¶ 9.

In 2014, Piper received a complaint from an ANP customer care employee that no one was in the Sub-Billing department on Saturday morning at 7:30 a.m., which is when the department opened. Dkt. 34-5, ¶ 10. When the complaint was made, Reliford worked every Saturday starting at 7:30 a.m.; the other rotating Saturday employee did not begin work until 9:00 a.m. Dkt. 34-5, ¶ 10; Dkt. 34-1 at 77. Following this complaint, Piper began tracking Reliford's key swipes, which document the time that an employee enters the building, for a period of 60 days. Dkt. 34-5, ¶ 11. The tracking revealed that Reliford was occasionally late to work; thereafter, Piper spoke to Reliford about being to work on

time. Dkt. 34-5, ¶ 11. Piper did not, however, take any disciplinary action against Reliford for her tardiness. Dkt. 34-5, ¶ 11.

On May 2, 2014, Piper issued Reliford a verbal warning about her productivity on Saturdays and mistakes that she made on certain accounts. Dkt. 34-1 at 115-17, Dkt. 35-4 at 33-38.

Piper never issued Reliford any written discipline during her employment with ANP. Dkt. 34-1 at 65; Dkt. 34-4 at 53.

In September 2014, Reliford was given additional duties following the departure of two employees in the Sub-Billing department. Dkt. 34-1 at 137-19; Dkt. 34-4 at 17. Piper spread the duties of the former employees amongst all other employees. Dkt. 34-4 at 17. Reliford told Piper that she could not keep up with her workload. Dkt. 34-4 at 17. On January 21, 2015, Piper sat next to and observed Reliford over the course of the work day to determine "what she's working on, how she's doing it, and if there was a reason maybe something was taking longer than what I was expecting it to." Dkt. 34-1 at 149; Dkt. 34-4 at 23.

In January 2015, Piper and Reliford met to discuss Reliford's 2014 Performance Review. Dkt. 34-5 at 171; Dkt. 34-2, Ex. 12. Reliford received a "Meets Standard" for her overall rating and a merit-based salary increase. Dkt. 34-5 at 172; Dkt. 34-2, Ex. 12. The 2014 Performance Review had some categories in which Reliford was given a rating of "Needs Improvement," which she disagreed with. Dkt. 34-5 at 172-77; Dkt. 34-2, Ex. 12.

On February 9, 2015, Reliford contacted Angie Mazares, a Senior Director of Human Resources based out of the ANP Florida office. Dkt. 34-1 at 133-34; Dkt. 34-3, ¶ 11. Reliford told Mazares that she was having problems with Piper that dated back

several years and she believed it to be racial discrimination. Dkt. 34-1 at 133-34. She also informed Mazares that in January 2015, following her 2014 Performance Review, Piper threatened to fire her. Dkt. 34-1 at 134. After she complained to Mazares, Mazares, Piper, and Reliford met on multiple occasions to discuss Reliford's job duties. Dkt. 34-5, ¶ 13. As a result of the meetings, Piper and Mazares determined that some of Reliford's duties could be transferred to other employees in the department, which occurred in March 2015. Dkt. 34-1 at 137-39; Dkt. 34-5, ¶ 13.

In April 2014, Reliford told Susie Ehman, a Human Resources Director in ANP's Indianapolis office, that she had been to speak with the EEOC but that the EEOC representatives told Reliford to try and "work it out." Dkt. 34-1 at 80-81; Dkt. 34-3, ¶ 5. On May 11, 2015, Reliford filed an official charge with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 34-2 at 205; Dkt. 34-2, Ex. 23. Reliford went to the EEOC on four previous occasions, but was told by EEOC representatives that she did not have a case. Dkt. 34-1 at 168-169. Ehman did not notify Piper that Reliford had contacted the EEOC until Reliford filed her official charge in May 2015. Dkt. 34-3, ¶ 12; Dkt. 34-5, ¶ 14. Piper stated that she could not remember the exact date that she learned of Reliford's EEOC complaint, but thought that she learned of it in "2014, I believe. Or 20-, early 2015 maybe even." Dkt. 41-5 at 15-16.

In March 2016, ANP's corporate office eliminated certain job titles across five states, including Indiana. Dkt. 34-3, ¶ 13. These job titles included the Order Rep and the Sales Order Entry Administrator positions. Dkt. 34-3, ¶ 13. Reliford and Amy Morgan, who both retained the title of Order Rep, were laid off. Dkt. 34-1 at 229-31; Dkt. 34-3, ¶ 14. Reliford stated that Morgan, who is Caucasian, was "directly comparable" to her. Dkt.

5

34-1 at 229. In addition to Reliford and Morgan, the elimination of other job titles resulted in two other employees being laid off, one African American and one Caucasian. Dkt. 34-2 at 204-05; 229-31. Reliford was offered a severance package, but turned it down. Dkt. 34-2 at 203-04. Piper did not have a role in the decision to terminate Reliford's position. Dkt. 34-3, ¶ 14; 34-4 at 53.

## II. SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part: The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed.R.Civ.P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87

(1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir.1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm,* 94 F.3d 254, 257 (7th Cir.1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir.1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir.1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir.1996).

## III. **DISCUSSION**

Title VII prohibits an employer from retaliating against an employee for engaging in a statutorily protected activity, which includes opposition of an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of his statutorily protected activity … and that there is a link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016. The 7th Circuit has adopted a "straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [adverse employment action]?" *Id.*

Reliford claims that ANP, and specifically Piper, retaliated against her on two separate occasions: first, when Piper assigned her additional duties in September 2014 and second, when ANP terminated her employment in March 2016. As to the first alleged retaliation, Reliford claims that she was given additional work because she complained to Ehman about Piper in May 2014. Dkt. 41-2 at 7-8. But Reliford has not shown that Piper ever knew of her earlier complaints to Ehman and therefore Piper could not have retaliated against Reliford because of the allegedly protected activity. Dkt. 41-2 at 6-7. Moreover, the only evidence of record establishes that Piper assigned her additional duties because two employees left Piper's department, and as a result, those employees' duties were "spread amongst everyone." Dkt. 34-4 at 17. Piper assigned all of the additional employees the work left because of the two vacancies, not just Reliford. And once Reliford expressed her concerns to Mazares about her heavy workload, Piper and Mazares reduced Reliford's responsibilities in March 2015. Dkt. 34-1 at 138-39; Dkt. 34-

4 at 41-42. Thus, Reliford has failed to show that she was given additional work because of her complaints to Ehman.

Reliford's retaliation claim as to her termination fares no better. Reliford alleges that Piper labeled her position as an Order Rep – the position that was eliminated during the downsizing – but in truth she was a Sub Billing Rep and was referred to as such in both her mid-year and year-end Performance Development Plans for 2014. Dkt. 41-2 at 10. Reliford also claims that Piper specifically told her that she was no longer an Order Rep. Reliford's claims that a a reasonable juror could infer that when Reliford was terminated, she "was not [an Order Rep], but a Subscriber Accounting Rep like every other employee in Piper's [d]epartment." Dkt. 41-2 at 10. Reliford believes that this change in job title allows for "a reasonable inference that it was Piper who made the decision to terminate Reliford in the context of the company's downsizing by claiming that Reliford still had the specific job title the company was looking to eliminate." Dkt. 41-2 at 10-11.

Reliford, however, points to no evidence that suggests ANP's decision to eliminate the Order Rep position was pretextual, which is essentially the argument she makes here. Proving pretext requires that a plaintiff demonstrate that the proffered reason for the adverse employment action was a lie or phony reason. *See Lord*, 839 F.3d at 565. The Court will not "second-guess[] an employer's facially legitimate business decisions." *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005). With respect to pretext, summary judgment is appropriate if a reasonable fact finder would be compelled to believe the employer's justification, but may be avoided if an employee points "to specific facts that place the employer's explanation in doubt." *Id.* Reliford's brief is deficient of

any evidence that could cast doubt on ANP's reason for terminating her employment and therefore no reasonable fact finder could conclude that ANP acted in retaliation for her reporting to the EEOC. Accordingly, summary judgment is appropriate on her retaliation claims under Title VII and § 1981.

## IV. CONCLUSION

The Court finds no genuine issue of material fact exists on Reliford's claims against ANP, improperly identified as Brighthouse Networks, LLC in the Complaint. Accordingly, Defendant ANP's Motion for Summary Judgment is **GRANTED**. The Court will enter judgment accordingly.

IT SO ORDERED this 15th day of May, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Craig W. Wiley
JACKSON LEWIS P.C. - Indianapolis
craig.wiley@jacksonlewis.com

Jay Meisenhelder
JAY MEISENHELDER EMPLOYMENT & CIVIL RIGHTS LEGAL SERVICES PC
jaym@ecrls.com